UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACOB ANDREWS, as Personal
Representative of the Estate of Angela
White, Deceased,

       Plaintiff,

v.

WAYNE COUNTY; SHERIFF
BENNY N. NAPOLEON, Wayne
County Sheriff; and DR. MOUHANAD
HAMMAMI, Director of Health,
Veterans & Community Wellness for
Wayne County,

       Defendants.
_____/

Case No. 17-11684

Paul D. Borman
United States District Judge

Mona K. Majzoub
United States Magistrate Judge

## OPINION AND ORDER GRANTING DEFENDANTS NAPOLEON AND HAMMAMI'S MOTION FOR JUDGMENT ON THE PLEADINGS

Two days after Angela White was taken into custody at the Wayne County Jail, she died from an overdose of medication that she had been allowed to keep with her by the jail's staff. Plaintiff Jacob Andrews, Ms. White's appointed personal representative, now sues Defendants Wayne County, Sheriff Benny N. Napoleon, and Dr. Mouhanad Hammami under 42 U.S.C. § 1983, alleging that their deliberate indifference to Ms. White's medical needs violated her rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

Before the Court is Defendants' Motion for Judgment on the Pleadings,[1] which seeks dismissal of the two individual Defendants Napoleon and Hammami. Plaintiff has sued Defendants Napoleon and Hammami in their official capacities only, and because Plaintiff has also sued Wayne County directly, his claims against the individuals are duplicative of his claims against Wayne County. For that reason, the Court will grant the individual Defendants' Motion for Judgment on the Pleadings and dismiss Defendants Napoleon and Hammami from the action.

## I. BACKGROUND

### A. Plaintiff's Factual Allegations

Plaintiff Jacob Andrews is the personal representative of Ms. White's estate, having been appointed as such by the Wayne County Probate Court, and he brings this action in that capacity. (ECF No. 1, Compl. ¶ 3.) He alleges that Defendant Benny Napoleon was at all relevant times the Sheriff of Defendant Wayne County, and that Defendant Mouhanad Hammami was at all relevant times the Director of Health, Veterans and Community Wellness, Chief Medical Officer for Wayne

---

[1] Defendants' Motion is captioned as a "Motion to Dismiss," but it is really a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). A "motion to dismiss" may only be made "before pleading" under Federal Rule of Civil Procedure 12(b)(6), and all three Defendants have already answered the complaint in this action. (ECF Nos. 5, 8.) A motion for judgment on the pleadings, by contrast, can be filed "[a]fter the pleadings are closed[,] but early enough not to delay trial." Fed. R. Civ. P. 12(c). Indeed, both parties identify Rule 12(c) as the applicable Rule in their briefs. In any event, as set forth below, the same standard applies to both types of motions.

County, and the Health Services Director for the Wayne County Jail. (*Id.* ¶¶ 5-6.)

According to the Complaint, Ms. White was admitted on May 14, 2014 to the Henry Ford Kingswood adult psychiatric hospital for anxiety and depression. She was placed on suicide precautions there, and stayed on an inpatient basis for three days and two nights. (*Id.* ¶ 7.) A few days later, from May 21 to May 28, 2014, Ms. White was hospitalized at the University of Michigan Hospital in Ann Arbor, Michigan "for a variety of conditions including headache, depression, epilepsy evaluation and psychiatric evaluation." (*Id.* ¶ 8.) During that hospital stay, Plaintiff alleges, Ms. White received a "nerve block" as treatment for a type of headache referred to in the medical records as "trigeminal autonomic cephalgia[]." (*Id.*)

On June 5, 2014, a little over a week after she was discharged from the University of Michigan Hospital, the Complaint alleges that Ms. White "was arrested in Canton Township, Michigan for allegedly attacking her boyfriend (Plaintiff) with scissors, and she was charged with domestic violence." (*Id.* ¶ 9.) At that time, she was taking a variety of medications that she had been prescribed during her two recent hospital stays. (*Id.* ¶ 9.) Ms. White was arraigned the following day in the 35th District Court in Plymouth, Michigan on a felony charge of assault with a dangerous weapon. (*Id.* ¶ 10.) The same day, while in the custody of the Canton Police Department, she was taken to a hospital for evaluation of chest pains and a headache. There, she was "treated with Reglan, Benadryl, Totadol and Ativan. She

was ordered to continue to use her medication upon her return to jail." (*Id.* ¶ 11.)

Plaintiff alleges that later in the same day—June 6, 2014—Ms. White was transported along with her personal belongings (including her medications) from the Canton Police Department to the Wayne County Jail. (*Id.* ¶ 12.) At approximately 9:20 that night, Ms. White was evaluated by medical personnel at the Wayne County Jail, who assigned her in the early hours of June 7, 2014 "to the Division I Infirmary cell #2, bed #1." (*Id.* ¶ 13.) At some time on June 7, Ms. White took a large overdose of the prescription drug Verapamil, which depressed her blood pressure, induced cardiac arrest, and ultimately resulted in her death on June 8, 2014. (*Id.* ¶ 18.)

Plaintiff further alleges that on and prior to June 7, 2014, Defendants maintained a formal policy and procedure allowing Wayne County Jail inmates to self-administer medications in certain circumstances. More specifically, Plaintiff alleges that Defendants, acknowledging "that many persons in the jail were on a regular regimen of prescribed medications," created a policy and procedure that contemplated "two classes of medications. The first class of medications had to be administered to an inmate by the jail nurse one dose at a time; the second class of medications were those that an inmate could have in the cell and could self medicate." (Compl. ¶ 14.) A copy of a Wayne County Jail Health Services Division Policy Directive entitled "Medication– Self Medication Program" is attached as the sole exhibit to the Complaint. (Compl. Ex. 1, Policy Directive.)

4

It was pursuant to this policy, according to the Complaint, that Defendants withheld various medications from Ms. White's possession but still allowed her to take Verapamil with her to her cell. That drug, an anti-hypertensive that is taken to reduce elevated blood pressure, was not on the policy's list of drugs that could only be administered to inmates by nurses. That list did, however, include the drug Catapres, which Plaintiff alleges serves the same blood-pressure reduction function as Verapamil. (Compl. ¶¶ 16-17, 19; Policy Directive at Pg ID 15.)

**B. Procedural History**

Plaintiff filed the Complaint in this action on May 26, 2017. (ECF No. 1, Compl.) Pled under 42 U.S.C. § 1983, the Complaint asserts that by including Catapres in the list of restricted drugs in the Self Medication Program but failing to include Verapamil, Defendants created an official policy or procedure that enabled and facilitated overdoses on dangerous prescription medications by inmates with emotional or mental health problems. (*Id.* ¶¶ 20-21.) The Complaint further alleges that Defendants were on notice of the danger of allowing an inmate to self-administer Verapamil because they included Catapres on the list, and were also on notice of the specific hazard in Ms. White's case because they retained the psychotropic drugs she had been prescribed for the treatment of depression and anxiety. (*Id.* ¶¶ 22-23.)

In addition, the Complaint asserts that Defendants were "deliberately indifferent and demonstrated a conscious disregard to the known, serious health

needs of [Ms. White], their prisoner, by implementation and enforcement of their 'Medication– Self Medication Program'" in various respects that include Defendants' facilitation of prescription-drug abuse, their failure to update the list of restricted drugs under the policy for over a decade, and their failure to place Ms. White in the mental ward of the Wayne County Jail. (*Id.* ¶¶ 25-29.) This conduct, the Complaint asserts, "deprived [Ms. White] of her right to adequate and necessary medical care while a prisoner of Defendants" in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. (*Id.* ¶ 30.) The Complaint then states that a wrongful death action has accrued to Plaintiff as the personal representative of Ms. White's estate, as well as Ms. White's two children and other relatives, under Mich. Comp. Laws § 600.2922. (*Id.* ¶¶ 32-34.) Plaintiff seeks damages including compensation for medical and funereal expenses, compensation for Ms. White's pain and suffering, consortium damages for Ms. White's next of kin, economic damages for pecuniary injuries, and other damages as may be fair and equitable. (*Id.* ¶ 35.)

Defendants Wayne County and Hammami answered the Complaint and asserted affirmative defenses on June 27, 2017. (ECF No. 5.) Defendant Napoleon, who was not served until August 7, 2017 (ECF No. 7), answered the Complaint and asserted affirmative defenses on August 11, 2017 (ECF No. 8).

The parties filed a Joint Rule 26(f) Discovery Plan on September 15, 2017.

(ECF No. 10.) Ten days later, Defendants filed the instant Motion for Judgment on the Pleadings. (ECF No. 11, Defs.' Mot.) After the Court extended the briefing deadlines, Plaintiff filed a timely Response to Defendants' Motion on November 6, 2017 (ECF No. 14, Pl.'s Resp.), and Defendants filed a timely Reply on November 27, 2017 (ECF No. 15, Defs.' Reply). The Court held a hearing on Defendants' Motion for Judgment on the Pleadings on Wednesday, January 31, 2018, and now issues the following ruling.

## II. LEGAL STANDARDS

"Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same de novo standards as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295 (6th Cir. 2008) (citing *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.,* 399 F.3d 692, 697 (6th Cir. 2005)). Indeed, "the legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same." *Lindsay v. Yates,* 498 F.3d 434, 437 n.5 (6th Cir. 2007). Therefore, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake,* 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted). The Sixth Circuit has explained that

> [a]lthough a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic

> recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir.2009) (quoting *Iqbal,* 129 S.Ct. at 1949).

*Reilly v. Vadlamudi,* 680 F.3d 617, 622–23 (6th Cir. 2012).

### III. ANALYSIS

The scope of Defendants' Motion for Judgment on the Pleadings is limited in one important respect: the Motion makes no argument for dismissal of Plaintiff's § 1983 claim as pled against Wayne County, and only seeks to have the two individual Defendants Napoleon and Hammami dismissed from the action.

A preliminary issue, then, is whether Plaintiff has asserted his claims against Defendants Napoleon and Hammami in their official capacities, their individual capacities, or both. "An individual-capacity claim is distinct from a claim against a defendant in his official capacity. The former claim may attach personal liability to the government official, whereas the latter may attach liability only to the governmental entity." *Essex v. Cty. of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013) (internal citations omitted) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985)). "In other words, an official-capacity claim is merely another name for a

8

claim against the municipality." *Id.* (internal citations omitted) (citing *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009)); *see also Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (explaining that an action premised on an official-capacity claim "is not a suit against the official but rather is a suit against the official's office") (internal quotation marks omitted) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

The Complaint in this action does not expressly state the capacity in which Defendants Napoleon and Hammami have been sued. The Sixth Circuit has held that "while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice" that he or she was being sued as an individual. *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (internal quotation marks and citations omitted). The "course of proceedings" test "considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Id.* at 772 n.1 (citing *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995)). And, significantly for present purposes, "[t]he test also considers whether subsequent pleadings put the defendant on notice of the capacity in which he or she

is sued." *Id.* With that last principle in mind, the Sixth Circuit in *Moore* concluded that in the case at bar, "[e]ven assuming the complaint itself failed to provide sufficient notice, [the plaintiff's] response to the [defendants'] motion to dismiss clarified any remaining ambiguity" by expressly stating that the defendants were being sued in their individual capacities. *Id.* at 774. The converse is true here. The Complaint does not allege individual conduct on Napoleon or Hammami's part with any degree of specificity, and although it is arguably ambiguous on the capacity issue because it does not expressly plead capacity one way or the other, any ambiguity arising from this omission is resolved by Plaintiff's clarification in his Response that the individual Defendants are "sued in their official capacities." (Pl.'s Resp. at 10, 14, Pg ID 124, 128.) *See Moore*, 272 F.3d at 774 ("Subsequent filings in a case may rectify deficiencies in the initial pleadings."); *see also Goodwin v. Summit Cty.*, 703 F. App'x 379, 383 (6th Cir. 2017) (holding that county officials had not been sued in their individual capacities where the officials had moved to dismiss the action because they had been sued in their official capacities only, and the plaintiff "voiced no objection to the County officials' capacity argument" in his response).

Accordingly, there is little question that Plaintiff's claims as pled against Defendants Napoleon and Hammami are solely official-capacity claims. For this reason, they are duplicative of Plaintiff's claim against Wayne County because, as noted, "official capacity claims are essentially claims against the entity itself." *Frost*

*v. Hawkins Cty. Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)). Defendants do not in fact challenge Plaintiff's claim as pled against Wayne County, and even state in their Reply that "the Sheriff is not a proper party. The County is the proper party." (Defs.' Reply at 3, Pg ID 158.)

Courts within the Sixth Circuit consistently dismiss official-capacity claims against municipal officials that are duplicative of claims asserted by the plaintiff against the municipal entity itself.[2] *See, e.g., Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996) ("We will . . . affirm the dismissal of the official capacity claims against [three municipal officials] because a suit against an official of the state is treated as a suit against the municipality.") (citing *Graham*, 473 U.S. at 165–66); *Cavanaugh v. McBride*, 33 F. Supp. 3d 840, 848–49 (E.D. Mich. 2014) ("[B]ecause [the plaintiff] has raised claims against Otsego County, the claims against [the county's sheriff and undersheriff] in their official capacities are duplicative and will be dismissed.), *aff'd* (Dec. 12, 2014);

---

[2] In fact, this practice is not unique to the Sixth Circuit. District courts in at least 25 different federal districts have, in published decisions concerning lawsuits brought against both municipalities and municipal officials in their official capacities, dismissed the official-capacity claims as duplicative of the entity claims. *See* M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 6.05 n.248 (4th ed. Supp. 2018) (collecting cases). *See also Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) ("Actually there is one defendant—the city—not two; for the complaint names the mayor as a defendant in his official capacity only, which is the equivalent of suing the city. This makes no practical difference; the city is liable for the official actions of its senior policy-making official. But nothing was added by suing the mayor in his official capacity.").

*Swartz Ambulance Serv., Inc. v. Genesee Cty.*, 666 F. Supp. 2d 721, 726 (E.D. Mich. 2009) ("[C]laims brought against Genesee Board of Commissioners and individual Commissioners pursuant to 42 U.S.C. § 1983 are duplicative of the claim against Genesee County because official capacity suits are the equivalent of a suit against the municipality. Accordingly, the Court dismisses the Board and individual Commissioners from those claims under 42 U.S.C. § 1983." (internal citation omitted) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

Citing the Sixth Circuit's decisions in *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985), and *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241 (6th Cir. 1989), Plaintiff argues that Defendant Napoleon, as Wayne County Sheriff, can in fact incur liability in this case based on his ultimate oversight and responsibility for the policy that allegedly caused Ms. White's death. To any extent that Plaintiff relies on *Marchese* and *Leach* with regard to the duplicative-claims issue that is presently before this Court, however, that reliance is misplaced.

The issue that the Sixth Circuit confronted in *Marchese*, at least as it relates to this matter, was "[w]hether Wayne County should have been dismissed as a defendant" to a § 1983 action concerning violent jailhouse misconduct by agents of the sheriff, "based either on an immunity conferred by Art. 7, Section 6 of the

Michigan Constitution,[3] or because the County cannot generate policy affecting Sheriff's Department operations under Michigan statutes." *Marchese*, 758 F.2d at 188. It was in order to answer both prongs of this question in the negative that the *Marchese* court made the finding that Plaintiff now cites in support of his argument:

> The Sheriff is . . . the law enforcement arm of the County and makes policy in police matters for the County. The County, through its Board of Supervisors, appropriates funds and establishes the budget for the Sheriff's Department. The Sheriff is elected by the voters of Wayne County. No doubt he is responsible for enforcing state law and presumably federal law as well. But equally clearly he is not an official of the State of Michigan or of the federal government. He is, under the Constitution of Michigan, the law enforcement officer for the County of Wayne with extraordinary power to select his deputies and enforce the law.
>
> We believe that the relationship between the County and the Sheriff's Department is so close as to make the County liable for the Sheriff's failure to train and discipline his officers and his ratification of the use of wanton brutality by members of his force which we have spelled out above.

*Id.* at 188-89 (internal citations omitted).

*Marchese* thus addressed the question of whether the sheriff's official-capacity liability could be imputed to the county notwithstanding provisions of Michigan statutory and constitutional law that appeared to keep the sheriff and the

---

[3] Here, the *Marchese* court was referring to a provision of the Michigan Constitution which states that a "county shall never be responsible for [the county sheriff's] acts, except that the board of supervisors may protect him against claims by prisoners for unintentional injuries received while in his custody." MI CONST Art. 7, § 6.

13

county separate. Here, there is no challenge to the appropriateness of Wayne County's party status, and *Marchese* has no relevance to the issue of the sheriff's redundancy as a Defendant. This is even truer of *Leach*, a decision that addressed a § 1983 action against a sheriff and a mayor sued in their official capacities in which the plaintiff did not name the municipal entity as a defendant at all. *See Leach*, 891 F.2d at 1245-46 ("Leach's suit against the Mayor and the Sheriff of Shelby County in their official capacities is, therefore, essentially and for all purposes, a suit against the County itself. The issue, therefore, is whether there was a policy or custom so attributable to the municipality as to render it responsible for payment of the damages found.").

Neither *Marchese* nor *Leach* provides guidance as to the proper course of action here, but the other decisions discussed above do. Plaintiff's claims against Defendants Napoleon and Hammami are clearly (and concededly) official-capacity claims only, and are thus duplicative of Plaintiff's claims against Defendant Wayne County. For that reason, the Court will grant Defendants' Motion for Judgment on the Pleadings and dismiss the two individual Defendants from this case.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings (ECF No. 11) is hereby GRANTED, and Defendants Napoleon and Hammami are dismissed from this action. The County of Wayne continues to remain a Defendant in this case.

IT IS SO ORDERED.

s/Paul D. Borman<br>
Paul D. Borman<br>
United States District Judge

Dated: February 8, 2018

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 8, 2018.

s/D. Tofil<br>
Deborah Tofil, Case Manager